UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JAY BRADSHAW,                                                   :
                                                               :
                                      Plaintiff,               :
                                                               :
                -v-                                            :        15-CV-9031 (JPO)
                                                               :
THE CITY OF NEW YORK, *et al.*,                                :        OPINION AND ORDER
                                                               :
                                      Defendants. :
---------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff Jay Bradshaw, currently incarcerated at the Green Haven Correctional Facility,

brings this action *pro se*, under 42 U.S.C. §§ 1981, 1983, and 1988, as well as under state law.

Bradshaw alleges that, when he was incarcerated at the Anna M. Kross Center, Defendants

denied him postage to mail his Notice of Intention to File a Claim by certified mail to the New

York Office of the Comptroller, violating his right of access to the courts, access to mail, and

other rights.  Bradshaw first filed suit on November 17, 2015.  (*See* Dkt. No. 2.)  Defendants then

filed a motion to dismiss (*see* Dkt. No. 13), and in response Bradshaw filed the operative

amended complaint in this action (*see* Dkt. No. 15 ("Compl.")).[1]  Defendants, in turn, filed a

motion to dismiss the amended complaint.  (Dkt. No. 19.)  For the reasons discussed below, the

motion to dismiss the amended complaint is granted in part and denied in part.

## I.    Background

      The facts described herein are, unless otherwise noted, taken from the operative

complaint, papers appended to the complaint, or, consistent with the Court's responsibility to

---

[1]    The pending motion to dismiss the initial complaint in this action is denied as
moot.  (*See* Dkt. No. 13.)  This Opinion and Order addresses Defendants' motion to dismiss the
operative amended complaint.

liberally construe a *pro se* plaintiff's papers, from Bradshaw's opposition to the motion to dismiss. *See Escoffier v. City of N.Y.*, No. 13 Civ. 3918, 2016 WL 590229, at *1 (S.D.N.Y. Feb. 11, 2016). Bradshaw's allegations are presumed true for the purposes of this motion.

The windows in the "dayroom area" at Anna M. Kross Center ("AMKC"), in the Quad Lower 6 housing unit—where Bradshaw was housed—would not close. (Compl. ¶ 11.) Even in the "bitterly cold months of January and February," the windows stayed open, prompting "several" inmate complaints regarding the temperature. (*Id.*) On February 15, 2015, maintenance "sealed all the windows" in the unit using plastic bags. (*Id.* ¶ 13.) But the unit now suffered from "insufficient air circulation" and lacked any ventilation, producing very hot temperatures that reached "above 100 degrees." (*Id.* ¶ 14.) Several inmate complaints were made as a result. (*Id.*)

About a week after the windows were sealed up, on February 22, 2015, Bradshaw suffered difficulty breathing, along with "throat and chest congestion, nausea and a headache." (*Id.* ¶ 15.) Bradshaw alleges that these symptoms were caused by the hot temperatures and absence of ventilation in the Quad. (*Id.*) As a result, Bradshaw was taken to the medical clinic at AMKC for an examination. (*Id.* ¶ 16.) The personnel there determined that Bradshaw had contracted a throat infection, and they provided him with treatment. (*Id.* ¶17; *id.* at 23-25 ("Ex. 1").)

As a result of the incident, Bradshaw sought to file a Notice of Intention to File a Claim against the City of New York for failure to properly maintain AMKC and for negligence in causing Bradshaw's illness. (*Id.* ¶ 18-19; *id.* at 27-30 ("Ex. 2").) Bradshaw sought to file the Notice within ninety days of the incident, by mid-May, as required by New York General Municipal Law § 50-e. (*Id.* ¶ 18.) On March 12, 2015, Bradshaw gave Officer Thomas (whom

Bradshaw describes as the "mail-officer at AMKC") certified, outgoing legal mail, which was labeled as such and addressed to the Office of the Comptroller.  (*Id.* ¶ 20; *id.* at 32 ("Ex. 3").)  Thomas told Bradshaw that because Bradshaw was "indigent and unable to pay" the cost of postage, he should "execute and submit with his certified . . . mail an 'Inmate Request for Withdrawal of Funds for Postage' form," which Bradshaw completed on March 12.  (*Id.* ¶ 21; *id.* at 24 ("Ex. 4").)  Based on this form, Bradshaw alleges that Defendant John Doe, a "Social Service Supervisor," determined that there was no money in Bradshaw's "Inmate Account" on March 16, March 19, and April 9, 2015.  (*Id.* ¶¶ 9, 22.)  Nevertheless, Doe failed to provide the funds required for postage and "held the mail."  (*Id.* ¶ 22.)

About a month after Bradshaw sought to send the Notice, on April 14, 2015, Thomas returned the Notice to Bradshaw, along with two other unspecified pieces of certified mail, also addressed to the Office of the Comptroller.  (*Id.* ¶ 23.)  Bradshaw claims that Thomas told him that Doe simply "refuse[d] to provide funds to pay [the] expense of the Certified Mail Receipt despite the Department's duty to indigent inmates."  (*Id.* ¶ 24.)  Thomas allegedly told Bradshaw to "file a grievance."  (*Id.* ¶ 25.)

On April 19, 2015, Plaintiff filed a grievance regarding the three pieces of "Certified (out-going legal) mail[]" addressed to the Office of the Comptroller that had been returned and for which Doe had refused to provide the required funds for postage.  (*Id.* ¶ 26; *id.* at 36 ("Ex. 5").)  Having received "no response," Bradshaw appealed and requested a formal hearing, by letter dated May 1, 2015.  (*Id.* ¶ 27; *id.* at 38 ("Ex. 6").)  Again receiving no word back, Bradshaw appealed to Tony Durante ("Warden Durante"), by letter dated May 11, 2015.  (*Id.* ¶ 28; *id.* at 40 ("Ex. 7").)  When Warden Durante failed to issue a decision, Bradshaw appealed to the "Central Office Review Committee" ("CORC"), by letter dated May 23, 2015.  (*Id.* ¶ 29;

3

*id.* at 42 ("Ex. 8").)  The CORC failed to render a decision or otherwise respond, so Bradshaw

considered his initial grievance and subsequent appeals "constructively denied."  (*Id.* ¶¶ 30-31.)

Bradshaw received only a letter from the "DOC, Office of the Commissioner" stating that the

Department of Correction had received his letter of May 23, 2015, and that the letter had been

forwarded to the appropriate unit for investigation.  (*Id.* ¶ 32; *id.* at 44 ("Ex. 9").)  But Bradshaw

received nothing further.  (*Id.* ¶ 33.)  The ninety-day window in which Bradshaw could file his

Notice of Claim under New York law elapsed on May 23, 2015.  (*Id.* ¶ 34.)

On May 9, 2016, Bradshaw was transferred from AMKC to Green Haven Correctional

Facility, where he remains to this day.  (*Id.* ¶ 35.)  Bradshaw alleges that this was the first time

he had access to a law library.  (*Id.*)

As a result of these circumstances, Bradshaw alleges that he was "prevented from

sending his Notice of Claim," forfeiting the chance to bring a legal action.  (*Id.* ¶ 36.)  Here,

Bradshaw brings a claim under 42 U.S.C. § 1983 for the deprivation of his access to courts and

his First Amendment right to send mail.  (*Id.* ¶¶ 38-43.)  Bradshaw further asserts claims for

discrimination on the basis of race or national origin.  (*Id.* ¶ 40.)  He additionally alleges that the

relevant authorities failed to intervene, and advances claims of supervisory and municipal

liability, based on a pattern or practice carried out by the city.  (*Id.* ¶¶ 53-66.)  Bradshaw further

claims that the City was generally negligent, and specifically negligent in the screening, hiring,

and retention of personnel at AMKC, and in its training and supervising, in violation of New

York law, and he further makes a claim for respondeat superior liability.  (*Id.* ¶¶ 67-78.)  Finally,

Bradshaw asserts a claim under the Constitution of the State of New York that duplicates the

federal constitutional torts alleged.  (*Id.* ¶¶ 79-81.)

## II.      Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on

its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation mark omitted)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at

678) (internal quotation marks omitted).

When evaluating whether a complaint meets these requirements, courts assume that all

"factual allegations contained in the complaint" are true, *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 572 (2007), and "draw all inferences in the light most favorable to the non-moving party[],"

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).

Additionally, a complaint "filed *pro se* is 'to be liberally construed,' and 'a pro se complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

97, 106 (1976)).

## III.     Discussion

The heart of Bradshaw's claims is that Defendants violated his rights, while he was an

indigent inmate at AMKC, by failing to provide the required postage to send outgoing legal mail.

"[A]s few as two incidents of mail tampering could constitute an actionable violation (1) if the

incidents suggested an ongoing practice of censorship unjustified by a substantial government

interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or

impaired the legal representation received." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003)

(citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "Interference with a prisoner's mail thus may implicate two distinct rights: the 'right of access to the courts' and the 'right to the free flow of incoming and outgoing mail.'" *Antrobus v. City of N.Y.*, No. 11 Civ. 2524, 2014 WL 1285648, at *2 (S.D.N.Y. Mar. 27, 2014) (quoting *Davis*, 320 F.3d at 351).

The Court first addresses Bradshaw's claims under federal and state law that Defendants' denying him postage deprived him of his right to access the courts. The Court then turns to Bradshaw's claim regarding his right to send mail generally. Finally, it discusses Bradshaw's other claims.

### A.      Access-to-Courts Claims

"Prisoners have a constitutional right of access to the courts and, where there is a deliberate and malicious interference with that right, may seek redress from the court." *Smith v. City of N.Y.*, No. 14 Civ. 443, 2015 WL 1433321, at *3 (S.D.N.Y. Mar. 30, 2015) (citing *Davis*, 320 F.3d at 351). This right includes "'a reasonably adequate' amount of postage" for access to the courts. *Chandler v. Coughlin*, 763 F.2d 110, 114 (2d Cir. 1985) (citation omitted) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)); *see Pollack v. Holanchock*, No. 10 Civ. 2402, 2012 WL 1646893, at *4 (S.D.N.Y. May 10, 2012) ("With regard to legal supplies, '[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents . . . and with stamps to mail them.'" (quoting *Bounds*, 430 U.S. at 824–25)).

### 1.      Federal Claims Against Doe and Durante

A Section 1983 claim for deprivation of access to the courts requires: (1) a legitimate underlying cause of action (separate from the deprivation of access claim); and (2) the frustration or hindrance of the litigation caused by defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). Considering prisoners' mail in the context of their right to access

courts, "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *McIntosh v. United States*, No. 14 Civ. 7889, 2016 WL 1274585, at *23 (S.D.N.Y. Mar. 31, 2016) (quoting *Davis*, 320 F.3d at 352). Rather, a plaintiff must establish an actual injury—that is, "actions that 'hindered [his] efforts to pursue a legal claim.'" *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Accordingly, Bradshaw alleges that he tried to initiate a legal action against AMKC by sending a Notice of Intention to File a Claim, that he was indigent at the time, and that Defendants denied him the required postage to send his Notice, prejudicing his putative suit.[2]

Defendants do not take issue with the cause of action underlying Bradshaw's claim— namely, that he was made sick by the lack of ventilation in AMKC Quad 6. Rather, they argue that he was not prejudiced in the pursuit of that claim by their actions vis-à-vis his outgoing mail. Defendants advance three arguments in support of this position: (1) that Defendants' actions only delayed Bradshaw's legal mail and thus did not actually prejudice him; (2) that Bradshaw failed to take additional action to further the underlying legal action after Defendants denied him postage; and (3) that the papers Bradshaw tried to mail, while prerequisites to filing subsequent legal action, were not directed to a court and did not contain a complaint or other papers initiating or supporting an existing legal action. (*See* Dkt. No. 20 at 5-7.) None of these arguments succeeds.

---

[2]      In passing, Bradshaw also refers to a lack of law-library services at AMKC. A prisoner's right of access to courts includes "[m]eaningful access" to a law library or legal assistance program that provides "the tools they need 'in order to . . . challenge the conditions of their confinement.'" *Peoples v. Fischer*, No. 11 Civ. 2694, 2012 WL 1575302, at *7 (S.D.N.Y. May 3, 2012) (quoting *Lewis*, 518 U.S. at 355). Bradshaw's access to courts claim is thus buttressed by his allegation that he did not have access to a law library of any kind during the relevant period, before his transfer to Green Haven Correctional Facility. (Dkt. No. 26 ¶ 24.)

First, Defendants observe that "mere delay" in communicating with a court does not constitute prejudice for the purposes of a Section 1983 access-to-courts claim.  (*Id.* at 7.)  But here, the timing of the legal mail was potentially dispositive of Bradshaw's entire underlying action.  The piece of mail at the heart of Bradshaw's claim is a Notice of Intention to File a Claim, which Bradshaw sought to file within the ninety-day window required by state law.  *See* N.Y. Gen. Mun. Law § 50-e(1).  Defendants' failing to provide postage sufficient to send the Notice can therefore be understood not as mere delay, but as real prejudice to Bradshaw's pursuit of his underlying claim.  *See, e.g.*, *Arnold v. Westchester Cty. Corr. Facility*, No. 10 Civ. 1249, 2011 WL 3501897, at *5 (S.D.N.Y. July 18, 2011) (dismissing claims where plaintiff "failed to plead . . . how the alleged interference [with his legal mail] impeded his access to the courts," to "explain why he needed to notify the [recipient] of his claims or how the rejection of his letter prejudiced his lawsuit").  This is so because, in Bradshaw's case, any delay that brought him close to the end of the ninety-day window had the potential to foreclose the action entirely.  Drawing all inferences in Bradshaw's favor, the facts as pleaded suggest prejudice to a putative legal action.

With regard to Defendants' second objection, Bradshaw's claim does not fail at this stage simply because he has not alleged that he attempted to resend the Notice after it was returned to him on April 14, 2015.  Bradshaw *has* pleaded that the ninety-day window in which he could file such Notice would expire less than a month after the mail was returned to him.  (Dkt. No. 26 ¶ 6.)  It may be the case, as Defendants argue (Dkt. No. 20 at 6-7), that courts have authority to grant leave to file a late notice of claim, *see* N.Y. Gen. Mun. Law § 50-e(5), but drawing all inferences in Bradshaw's favor, he may well have reasonably assumed that such special exception would or could not be made or that Doe's repeatedly denying Bradshaw postage would

render any effort wasted.  Bradshaw could have reasonably assumed so at least, that is, until he "file[d] a grievance" against Doe to change his conduct, as Officer Thomas recommended and which Bradshaw did promptly, on April 19, 2015.  (Compl. ¶¶ 25-26.)  Construing Bradshaw's allegations to make their strongest argument, it is possible to read his grievance and subsequent appeal efforts as actions further attempting to initiate the underlying legal action that were prejudiced because of Defendants' actions and inaction.  (*Id.* ¶¶ 25-28.)

Defendants' third argument is that Bradshaw fails to make out a claim because his legal mail did not implicate any *existing* legal action.  But Defendants acknowledge that Bradshaw's Notice of Intention to File a Claim was an initial step toward his filing a legal action under state law.  (Dkt. No. 20 at 5.)  As such, Defendants' actions in preventing Bradshaw from sending the Notice "hindered [his] efforts to pursue a legal claim."  *Davis*, 320 F.3d at 351 (quoting *Monsky*, 127 F.3d at 247).  *See, e.g.*, *Cancel v. Goord*, No. 00 Civ. 2042, 2001 WL 303713, at *4-5 (S.D.N.Y. Mar. 29, 2001).  Bradshaw's Notice thus qualifies as legal mail for the purposes of his access-to-courts claim.

Defendants further contest Bradshaw's claims of individual liability as to named defendants John Doe, a "Social Service Supervisor," and Warden Durante.  They argue, as a threshold matter, that Bradshaw has failed to plead sufficient facts to show that any alleged violations by Doe or Durante were "deliberate and malicious," as required.  *See Smith*, 2015 WL 1433321, at *3.  The standard for pleading the state of mind of Defendants is low in the context of a 12(b)(6) motion.  *See Jean-Laurent v. Lawrence*, No. 12 Civ. 1502, 2013 WL 1129813, at *5 (S.D.N.Y. Mar. 19, 2013) ("[A]lleg[ations] that [officials] simply ignored Plaintiff's repeated oral and written requests for assistance . . . could plausibly rise to the level of deliberate and malicious behavior.")  This is because questions of state of mind are often "question[s] of fact"

9

that are inappropriate as a basis for dismissal so early in litigation.  *See, e.g.*, *Hardy v. City of N.Y.*, 732 F. Supp. 2d 112, 135 (E.D.N.Y. 2010) (declining to decide state of mind even at summary judgment).

Drawing all inferences in Bradshaw's favor, he has pleaded enough for an inference of deliberateness regarding Doe's and Durante's actions.  The envelopes for which Doe allegedly declined to provide postage were marked with the word "legal mail," supporting a plausible inference that Doe understood that his actions—namely, his refusing to provide the required postage—constituted interference with legal mail.  (Ex. 3.)  And the appeal that Warden Durante allegedly failed to act upon likewise made clear that Bradshaw's legal mail was being mishandled, supporting an inference that Durante may have deliberately ignored the clear consequences of his failure to intervene.  (Ex. 7.)

Setting aside the sufficiency of Bradshaw's pleadings as to Doe's and Durante's state of mind, Defendants further argue that Bradshaw does not state a claim against either one because he does not allege enough about their individual conduct.  First, as to Doe, the specific conduct he allegedly carried out—namely, the refusal to provide the requisite postage—forms the basis of Bradshaw's claims.  (Dkt. No. 26 at ¶¶ 9-12.)  Bradshaw has therefore pleaded enough conduct by Doe to state a claim against him.

Second, as to Warden Durante, supervisory liability can be established by evidence that the official, after being informed of the violation through a report or appeal, failed to remedy the wrong.  *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001).  Bradshaw accordingly alleges that Warden Durante at least failed to take action following an appeal—made by letter and appended to Bradshaw's complaint—of several instances of failure

to provide postage for outgoing legal mail.  (*See* Ex. 7.)  Bradshaw has therefore alleged enough as to Durante's conduct to state a claim against him.

### 2.     Qualified Immunity

Defendants nonetheless argue that John Doe and Warden Durante are entitled to qualified immunity.  A finding of qualified immunity involves a two-step analysis: (1) whether plaintiff alleges the violation of a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation.  *See Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999).  For qualified immunity to bar suit at the motion-to-dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint," but also "the plaintiff is entitled to all reasonable inferences . . . that defeat the immunity defense."  *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004).

As discussed above, Bradshaw has stated a claim that he suffered a violation of his constitutional right of access to the courts.  Defendants' argument hinges, therefore, on the second step of the analysis: whether the right was clearly established.  With respect to Doe, who allegedly carried out the violation by withholding postage, at the time of the alleged violation in 2015, it was firmly established in the Second Circuit that prison officials must provide a reasonably adequate amount of postage for access to the courts.  *See, e.g.*, *Chandler*, 763 F.2d at 114.  As regards Warden Durante, "[m]ultiple Second Circuit opinions . . . [have] held that 'the personal involvement of a supervisory defendant may be shown by evidence that the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong' or 'the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.'"  *Jean-Laurent v. Lawrence*, No. 12 Civ. 1502, 2014 WL 1282309, at *3 (S.D.N.Y. Mar. 28, 2014) (internal alterations

11

omitted) (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).  Based on the facts as

alleged, and drawing all inferences in Bradshaw's favor, Doe and Durante are therefore not

entitled to qualified immunity at this stage of litigation.

### 3.    Municipal Liability

Defendants additionally argue that Bradshaw does not allege enough to state a claim for

municipal liability against the City of New York.  To state a claim for municipal liability, a

plaintiff must allege that his injury was the result of an official policy, custom, or practice of that

municipality.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978).

Notwithstanding an official Department of Correction policy to pay certified mail postage

for indigent inmates, Bradshaw makes allegations, both in the operative amended complaint and

in his opposition papers, *see Escoffier*, 2016 WL 590229, at *1, that the Department of

Correction maintained a custom of failing to send legal mail.  Specifically, Bradshaw alleges that

he faced "consistent troubles with sending out-going legal mails" due to his inability to "afford

postage," including "substantial amounts of regular out-going legal mails and several other out-

going certified mails that were never mailed out but instead returned" and "'other' intended

correspondences to the court [that] were . . . never received." [3]  (Dkt. No. 26 ¶¶ 18-22.)   He

claims that these "continu[ing]" issues constituted an "official policy or custom" of the

Department of Correction.  (*Id.*)

These allegations—with all inferences construed in Bradshaw's favor and with the

special solicitude afforded to *pro se* filings—are enough to state a claim for municipal liability at

---

[3]      Defendants argue that Bradshaw cannot state a claim for a custom of denial of
access to courts because Bradshaw has initiated a handful of lawsuits while incarcerated.  (Dkt.
No. 30 at 6.)  This argument is beside the point.  The fact that some amount of Bradshaw's legal
mail *may* have made it to the intended recipient does not undermine his claim that Defendants
repeatedly withheld other items of legal mail, at least at the motion-to-dismiss stage.

this early stage.  *See, e.g.*, *Carrasquillo v. City of N.Y.*, 324 F. Supp. 2d 428, 437 (S.D.N.Y. 2004) (finding that *pro se* plaintiff had alleged enough regarding a City "policy of not providing prisoners with adequate protection" on buses where the complaint asserted only "that the City [was] liable for causing his injuries . . . by failing to provide him with a seatbelt"); *Gachette v. Metro N. High Bridge*, No. 12 Civ. 3838, 2013 WL 144947, at *5–6 (S.D.N.Y. Jan. 14, 2013) (inferring in *pro se* pleadings sufficient allegations of a municipal policy or custom of discrimination where plaintiff alleged that "black electricians were paid less than white ones").

       **4.**     **State-Law Claims**

As to Bradshaw's state-law claim for negligence in hiring, retention, training, or supervision, "[t]o state a claim . . . [a] plaintiff must show that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence." *Williams v. City of N.Y.*, 916 F. Supp. 2d 235, 245 (E.D.N.Y. 2012) (internal quotation marks omitted) (quoting *Ehrens v. Lutheran Church,* 385 F.3d 232, 235 (2d Cir. 2004)).  For the same reasons discussed above regarding a custom carried out by the Department of Correction, Bradshaw has also pleaded enough to suggest that the Department knew or should have known about the alleged repeated failure to send outgoing legal mail.  The same applies to Bradshaw's claim for respondeat superior liability.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991).

Because Bradshaw has stated a claim under Section 1983 for violations of his right of access to the courts under federal law, any parallel claims under the New York Constitution, to the extent he makes them, must be dismissed.  *See Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) ("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available

under § 1983." (quoting *Campbell v. City of N.Y.*, No. 09 Civ. 3306, 2011 WL 6329456, at *5
(E.D.N.Y. Dec. 15, 2011))).

**B.      Access-to-Mail Claims**

A plaintiff states a claim for a violation of his First Amendment rights where "officers
regularly and unjustifiably withheld or threw away . . . mail." *Antrobus*, 2014 WL 1285648, at
*4 (collecting cases). What is more, "many courts" in this Circuit have held that "a prisoner's
legal mail is entitled to a higher degree of protection than his regular mail." *Cancel*, 2001 WL
303713, at *6 (citing *Morgan v. Montanye*, 516 F.2d 1367, 1368 (2d Cir. 1975)).[4] As a result,
practices that interfere with legal mail "whether incoming or outgoing must be supported by a
legitimate penological interest other than mere general security concerns which permit
interference with regular mail." *Id.*

To advance his claim, Bradshaw has alleged at least three specific instances of
interference with his outgoing legal mail (Compl. ¶¶ 23, 26), enough, at this stage, to suggest a
pattern rather than an isolated incident. *See Washington*, 782 F.2d at 1139 (finding references to
two instances of interference with prisoner mail can be enough to "allege[] continuing activity
rather than a single isolated instance"). As such, Bradshaw has stated a Section 1983 claim for
violations of his First Amendment rights to send legal mail.[5]

---

[4]      "The First Amendment protects prisoners' access to mail directly, unlike the right
of access to courts, which protects prisoners' access to mail only derivatively and with respect to
given claims." *Bellezza v. Holland*, No. 09 Civ. 8434, 2011 WL 2848141, at *6 (S.D.N.Y. July
12, 2011). "It is thus not necessary to allege actual injury when asserting a violation of one's
right to the free flow of mail." *Antrobus*, 2014 WL 1285648, at *4 (collecting cases). As a
result, the Court credits the several instances of alleged failure to provide postage for legal mail.
(Compl. ¶ 26.)

[5]      As above, because Bradshaw has stated a claim for violations of his rights under
federal law, his parallel claims under the New York Constitution, to the extent he makes them,
must be dismissed. *See Hershey*, 938 F. Supp. 2d at 520.

### C.       Additional Claims

Bradshaw also asserts claims of race or national origin discrimination under 42 U.S.C. §§ 1981, 1983, and under the New York Constitution.  In order to state a discrimination claim, a plaintiff must allege "some specific allegations of fact indicating a deprivation of rights" based on the protected trait.  *Barr v. Abrams*, 810 F.2d 358, 262 (2d. Cir. 1987).  Bradshaw, in contrast, has advanced only conclusions that Defendants' conduct was based on race or national origin. As a result, Bradshaw fails to state a claim for race or national origin discrimination.

## IV.    Conclusion

For the foregoing reasons, the motion to dismiss is GRANTED IN PART, with respect to Bradshaw's claims race and national origin claims under the Equal Protection Clause and Section 1981, as well as his state-constitution claims, and DENIED IN PART, as regards the Section 1983 and state-law claims for denial of access to courts and interference with outgoing legal mail.

The Court grants Bradshaw leave to amend his complaint to replead his race and national origin discrimination claims under the Equal Protection Clause, Section 1981, and the New York Constitution.  *See Henriquez-Ford v. Council of Sch. Supervisors & Adm'rs*, No. 14 Civ. 2496, 2016 WL 93863, at *2 (S.D.N.Y. Jan. 7, 2016) ("[W]here dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court should not dismiss without granting leave to amend at least once . . . ." (quoting *Crisci-Balestra v. Civil Serv. Employees Ass'n, Inc.*, 2008 WL 413812, at *6 (E.D.N.Y. Feb. 13, 2008))).  If Bradshaw wishes to file a second amended complaint, he must do so on or before February 24, 2017.

The Clerk of Court is directed to close the motions at Docket Number 13 and Docket

Number 19.


SO ORDERED.


Dated:  New York, New York
        January 23, 2017

_____
            J. PAUL OETKEN
        United States District Judge


*COPY MAILED TO PRO SE PARTY BY CHAMBERS*